# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILVE DIVISION

DAVID LEE KESTNER,      )
                            )
        Petitioner,      )        CASE NO. 3:09-0635
                            )        JUDGE HAYNES
v.                          )
                            )
RICKY BELL, Warden,     )
                            )
        Respondent.    )

## M E M O R A N D U M

Petitioner David Lee Kestner, filed a pro se action seeking the writ of habeas corpus to set aside his state convictions for felony murder, especially aggravated robbery, and aggravated burglary. Petitioner received a life sentence for felony murder, fifteen (15) years for especially aggravated robbery, and three (3) years for aggravated burglary that are concurrent. After a review of the petition, the Court appointed the Federal Public Defender to represent Petitioner and an amended petition was filed. Petitioner's claims in the amended petition[1] are: (1) ineffective assistance of trial counsel; (2) an involuntary guilty plea; (3) violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) and Missouri v. Seibert, 542 U.S. 600 (2004); and (4) violation of Brady v. Maryland,373 U.S. 63 (1963).

### A. Procedural History

---

[1] The amended petition incorporates the pro se petition without any legal analysis. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supersedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the amended petition supersedes the pro se petition, and the claims unsupported by legal analysis are deemed waived.

Petitioner was originally charged with premeditated first degree murder, first degree felony murder, especially aggravated robbery and two counts of aggravated burglary. State v. Kestner, No. M2004-02478-CCA-R3-CD, 2006 WL 359698 at *1 (Tenn. Ct. Crim. App., Feb. 10, 2006) (perm. app. denied, June 26, 2006). In response, Petitioner filed motions to suppress and to dismiss that after an evidentiary hearing, the trial court denied. Id. Four days later, Petitioner entered a guilty plea to felony murder, especially aggravated robbery and two counts of aggravated burglary, but reserved his right to appeal the claims in his motions to suppress and to dismiss. Id. Nine days later, Petitioner moved to withdraw his guilty pleas that the trial court denied. Petitioner appealed his reserved questions of law to the Tennessee Court of Criminal Appeals. That court deemed the two Miranda issues in Petitioner's motion to suppress to be at best harmless error and non-dispositive, but decided the merits of the joinder issue and affirmed Petitioner's convictions. Petitioner applied to the Tennessee Supreme Court for permission to appeal that the Tennessee Supreme Court denied.

On April 16, 2007, the Petitioner filed a pro se state post-conviction petition for which the trial court appointed counsel. After an evidentiary hearing, the trial court denied the petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. Kestner v. State of Tennessee, No. M2007-0239-R3-PC, 2008 WL 5397762 (Tenn. Crim. App., Dec. 29, 2008). Petitioner appealed to the Tennessee Supreme Court for permission to appeal that the Court denied.

## B. Review of the State Record

2

In Petitioner's direct appeal, the Tennessee Court of Criminal Appeals made the following findings of fact[2]:

> On the morning of April 28, 2003, several officers were involved in a high-speed vehicle pursuit of the defendant. Officer Johnson testified that a car matching the description of a car involved in a series of burglaries was reported to the police. According to Officer Johnson, he and other police officers were instructed to stop the car and question the driver. Officer Johnson testified that when the pursuit began, he was not aware the defendant was a suspect in a homicide investigation. Officer Helm, another officer involved in the pursuit, testified that the defendant stopped his car, exited his vehicle, shot at several officers, and fled on foot. The officers and a K-9 unit tracked the defendant to a hiding place underneath a nearby house. The officers apprehended the defendant, searched under the house, and recovered a .25 caliber pistol. Officer Helm stated that the police pursuit of the defendant had nothing to do with the ongoing homicide investigation, but involved the police officers' attempt to question the defendant about the burglaries.

> From these events, the defendant ultimately pled guilty to felony vandalism, aggravated assault, felony evading arrest, misdemeanor evading arrest, and two counts of felony reckless endangerment on November 10, 2003.

> On August 16, 2004, the defendant pled guilty to felony murder, aggravated burglary, and especially aggravated robbery. The facts giving rise to these charges were presented by the state at the plea hearing as follows:

>> [O]n April twenty-third, two-thousand-three, the Defendant's friend, the Co-defendant in this case, Jimmy Bonds, had gone over to the home of Thomas West and burglarized the home, when he wasn't there. During that burglary Mr. Bonds stole a large amount of marijuana.

>> On the twenty-sixth, Mr. Bonds got his friend, the Defendant, Mr. Kestner, to go back over to the residence to steal more drugs, money, and whatever else they could find in the apartment.

---

[2] State appellate court opinion findings can constitute factual findings in a habeas action . Sumner v. Mata, 449 U.S. 539, 546-47 (1981), and have a statutory presumption of correctness 28 U.S.C. § 2254(e).

They went-before-before going over to Mr. West's apartment, which was located on the third floor of an apartment complex in Spinnaker Cove Apartments in Davidson County, they went to the apartment complex across the street, The Arbors, and stole a twenty-four-foot extension ladder off of a van in that complex; brought it over to Mr. West's complex, set it up against the back side of Mr. West's apartment, the balcony; and climbed up onto the balcony.

The Defendant entered the residence first, while carrying a twenty-five-caliber weapon, handgun; broke through the screen door-the glass door to the balcony was already open-entered the apartment, while Mr. West was sitting on his couch with his dogs watching TV.

Pretty much right when they walked into the apartment, the Defendant Kestner fired the weapon at Mr. West and hit him in his chest.

At that point Mr. West stood up, took a few steps toward the Defendant; and the Defendant then shot him in the head, which killed him immediately.

At that point the Defendant and Mr. Bonds went through the apartment, stole numerous items from the apartment, including the victim's gun, his jewelry, some drugs, money, personal items that were located in several bags throughout the apartment, including the victim's birth certificate, which was later found in a search warrant at the Defendant's friend Mr. Bond's parent's home.

As a condition of his guilty plea, the defendant waived his right to appellate review with the exception of three certified questions. The trial court accepted the defendant's plea and signed judgment sheets containing the notation, "Issues in motion to suppress and motion to dismiss the indictment are reserved as certified questions of law."

On August 25, 2004, the defendant filed a motion to withdraw his guilty plea. In support of his motion, the defendant alleged that since the time he pled guilty, his counsel had informed him that the two certified questions regarding the motion to suppress were not dispositive of the case and would not be reviewed by this court. On September 10, 2004, the trial court conducted a hearing on the defendant's motion to withdraw his guilty plea and took the matter under advisement.

4

Meanwhile, on September 15, 2004, the trial court and the parties signed an addendum order to the final judgment regarding the certified questions of law. In the addendum order, the trial court followed the procedure set out in Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure, and State v. Preston, 759 S.W.2d 647 (Tenn.1988), for reserving certified questions of law. Also, on September 15, 2004, the defendant filed his notice of appeal of "the Certified Questions of Law designated in the Addendum to the Judgment entered the 15th day of September, 2004."

Afterward, on September 28, 2004, the trial court issued an order denying the defendant's motion to withdraw his guilty plea, finding that the defendant entered his plea knowingly, voluntarily, and understandingly. The transcript of the guilty plea colloquy showed that at the time of the plea the defendant was aware that the appellate court might not accept the certified questions he hoped to appeal.

Kestner, 2006 WL 359698 at * 1-3 (footnotes omitted). The state courts other factual findings are

set forth in the context of Petitioner's specific claims.

## C. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997).

Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their

merits in a state court proceeding, unless that state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state

court judgment is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

5

court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. In Bell v. Cone, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

6

In this and related contexts <u>we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it</u>. See <u>Yarborough v. Gentry</u>, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (<u>per curiam</u>) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

<u>Holland v. Jackson</u>, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." <u>Mitchell v. Mason</u>, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. <u>Skaggs v. Parker</u>, 235 F.3d 261, 266 (6th Cir. 2001).

## 1. Ineffective Assistance of Counsel Claims

In his post-conviction appeal, Petitioner's specific claim was "that his counsel failed to advise him that the certified questions of law would not be reviewed if they were not dispositive of the case and that he would not have entered his guilty pleas if he had known two of three questions would not be reviewed." <u>Kestner</u>, 2008 WL 5397762 at *3. The Tennessee appellate court summarized the evidence on this claim as follows:

At the post-conviction hearing, the petitioner testified that he pled guilty after trial counsel advised him that as part of the plea agreement, he would have the right to appeal three certified questions. He said counsel told him the issues "were to be dispositive of the case" but that he did not know the meaning of "dispositive" at the time. He also said that he did not remember counsel telling him that the court might not consider the issues. He said he would not have pled guilty if he had known the appellate court would not consider the issues.

The petitioner said he remembered acknowledging that he understood when the trial court advised him that the appellate court might not consider the issues. He

7

said despite his having said he understood, he did not because he was in a state of shock that he was "signing [his] life away."

On cross-examination, the petitioner acknowledged that he had given a statement in which he admitted his guilt of the murder. He admitted that he was wearing the victim's necklace when he was arrested and that he possessed the murder weapon.

Trial counsel testified that he had never done a certified question of law in his seven years of practice before the petitioner's guilty pleas. He said he did not advise the petitioner that the questions must be dispositive of the case because he did not realize this until after the petitioner entered the pleas. Counsel said he realized he had given the petitioner bad advice and filed a motion to withdraw the guilty pleas. He said he brought his error to the trial court's attention at the hearing on the motion to withdraw the pleas.

Trial counsel testified that the petitioner had charges pending pursuant to two indictments. He said that the petitioner ultimately entered guilty pleas to both indictments and that the plea agreement ensured concurrent sentencing for the convictions from both indictments. Trial counsel said that the State's evidence against the petitioner was compelling. He said that the case was a difficult one to defend based upon the state's evidence.

The transcript of the motion to withdraw the guilty plea was received as an exhibit at the post-conviction hearing. At that hearing, the petitioner testified that he had rejected a plea offer because it did not give him an opportunity to appeal but that he had accepted a later offer which allowed him to reserve three certified questions of law. The petitioner said that trial counsel never used the word "dispositive" when advising him before he entered his pleas and that he had not heard this word until later. Trial counsel stated that two of the three issues reserved in the plea agreement were not dispositive of the case and that he had given his client bad advice. The trial court's order on the motion to withdraw the guilty pleas has not been made part of the record, but the order denying post-conviction relief recites that the court denied the motion to withdraw and that the ruling was not appealed.

The trial court denied the post-conviction petition, finding that the petitioner had failed to prove by clear and convincing evidence that his pleas were not entered knowingly, understandingly, and voluntarily or that he had received ineffective assistance of counsel. The petitioner has appealed the denial of relief.

Kestner, 2008 WL 5397762 at *2-3.

8

Citing federal law, the Tennessee Court of Criminal Appeals concluded that notwithstanding Petitioner's counsel's omission, the trial court ensured that Petitioner was informed that any appeal of his reserved questions was not guaranteed:

> In the present case, **trial counsel acknowledged he had not advised the petitioner that the certified questions of law must be dispositive of the case in order to be considered by the appellate court and that there was no guarantee the appellate court would review the questions. Two of the three certified questions were not reviewed because they were deemed not dispositive. However, the petitioner acknowledged at the hearing that the trial court had given him this advice before he accepted the plea agreement and that he had verbalized his understanding of it.** We hold that the trial court did not err in finding that the petitioner failed to establish his ineffective assistance of counsel claim by clear and convincing proof. **Even if the petitioner received incomplete advice from his trial counsel, he was given the correct advice before entering his pleas.** Thus, he failed to establish that he was prejudiced by any deficient performance of counsel. Because he did not establish both prongs of his ineffective assistance of counsel claim, the trial court properly denied relief.

Id. at *3 (emphasis added).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

9

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). A court must examine not only the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Where the ineffective assistance of counsel claim involves a guilty plea, Petitioner must present proof that but for his counsel's acts or omissions and under all of the circumstances, he

would not have pled guilty and would have insisted upon a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This assessment includes whether any "affirmative defense likely would have succeeded at trial," id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003), and whether any cited evidence "likely would have changed the outcome of [the] trial." Hill, 474 U.S. at 59; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006).

The transcript of the Petitioner's guilty plea supports the Tennessee appellate court's ruling that petitioner understood that the appeal of his reserved claims was not guaranteed:

THE COURT: All right. It's being recommended, on your plea of guilty to first degree murder, that you received a life sentence; on your plea of guilty to aggravated burglary, that you receive a three-year sentence; on your plea of guilty to especially aggravated robbery, that you receive a fifteen-year sentence, at one-hundred percent; these sentences to run concurrently with each other and your other case in two-thousand-three-seventeen-seventy (sic).

Is that your understanding?

THE DEFENDANT: Yes, sir, it is.

THE COURT: All right. According to his plea petition, **you and the state are in agreement that the three issues about the mandatory joinder and the suppression of your statement could be appealed, but there's no-- obviously, no guarantee, number one, that they would accept the appeal; number two, that it would be granted**.

Do you understand that?

THE DEFENDANT: Yes, sir.

(Docket Entry No. 17-6 at 9-10) (emphasis added).

Moreover, at the hearing on Petitioner's motion to withdraw his plea, Petitioner admitted on cross-examination that the trial court properly advised on the appeal issues.

GENERAL MEADE: Now, you testified that you were sworn under oath on the day that you did your plea; is that right?

11

DEFENDANT: Yes, ma'am.

GENERAL MEADE: Do you recall during your plea – the state did not say these were dispositive; did they? We didn't tell you that. Your lawyer told you that; right?

DEFENDANT: Correct.

GENERAL MEADE: Okay. But I didn't.

DEFENDANT: No. ma'am.

GENERAL MEADE: Do you remember the Judge, during your plea, while you were under oath, saying, according to the plea petition, you and the state are in agreement that the three issues about mandatory joinder and suppression of your statement could be appealed, but there's no – obviously, no guarantee, number one, that they would accept the appeal; number two, that it would be granted. Do you understand that? You responded, yes.

DEFENDANT: Yes, I recollect that, yes, ma'am.

GENERAL MEADE: **So this Court also told you that there was no guarantee that the Court would take these issues and there's no guarantee that they would be granted. You said you understood that and you chose to enter this plea knowing that; isn't that correct?**

DEFENDANT: **Yes, that is correct. But I felt that we had a strong –**

GENERAL MEADE: Well, what you felt –

DEFENDANT: **- - case of appealing. That's only why I would ever have took a life sentence; ma'am.**

GENERAL MEADE: The Court asked you if you understood that the Court may not accept or may not grant and you said you understood that. And when he went back a few minutes later and asked you, in entering this plea, is this what you choose to do, you said, yes. So you accepted this plea, knowing full well that you may not be able to appeal or that the Court may not accept your appeal or that the Court may not grant that. You understood. Yes?

DEFENDANT: Yes, I understood.

12

(Docket Entry No. 17-7 at 11-12 (emphasis added).

Thus, the Court concludes that the state courts could reasonably apply federal law to conclude that Petitioner was fully informed at the time of his guilty plea, that there was not any guarantee that the Tennessee appellate court would accept his three claims/issues for appellate review.

### 2. Invalid Guilty Plea

Petitioner's next and related claim is that his guilty plea was involuntarily and unknowing[3] because of his counsel's cited omission on the appeal issues. In upholding the trial court's order denying post-conviction relief, the Tennessee Court of Criminal Appeals held that:

> When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn.Crim.App.1995). The circumstances include
>
> > the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.
>
> Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Id.

---

[3]Respondent contends this claim was not fairly presented to the state courts and is procedurally defaulted and barred from habeas relief, but given the above quoted language, the Court disagrees.

13

We note that in the present case, the petitioner has failed to include the transcript of the guilty plea hearing and the transcript of the hearing on the motion to withdraw the guilty plea in the record. Notwithstanding these deficiencies, we have reviewed these documents from the record of the petitioner's previous appeal. See T.R.A.P. 24 (content and preparation of the record); Delbridge v. State, 742 S.W.2d 266, 267 (Tenn.1987) (courts may take notice of record in earlier proceedings of the same case).

The transcript of the plea hearing reflects that the court admonished the petitioner,

> According to this Plea Petition, you and the State are in agreement that the three issues about the mandatory joinder and the suppression of your statement could be appealed, but there's no-obviously, no guarantee, number one, that they would accept the appeal; number two, that it would granted.

The petitioner voiced his understanding. After questioning about the petitioner's understanding of the waiver of jury trial, the court then asked the defendant if he understood the following:

> And, other than this request for the certified question appeal, that I've mentioned previously, this would be your last day in court on this case.

> The only issue potentially that you would be appealing to a higher court would be those issues about ... the Court's prior ruling.

> Do you understand that?

The petitioner responded, "Yes, sir, I do."

The transcript of the hearing on the motion to withdraw the guilty plea reflects that the petitioner was asked on cross-examination by the State whether at the guilty plea hearing, the court told him that there was no guarantee the appellate court "would take these issues" or that "they would be granted." The petitioner stated, "Yes, that is correct. But I felt we had a strong ... case of appealing. That's only why I would ever have took [sic] a life sentence[.]" The prosecutor then restated the question, asking whether the petitioner accepted the plea "knowing full well that you may not be able to appeal or that the Court may not accept your appeal or that the Court may not grant that." The petitioner responded, "Yes, I understood."

14

> Further, the petitioner acknowledged at the post-conviction hearing that the trial court advised him that his certified questions might not be reviewed by the appellate court and that there were no guarantees in this regard. The petitioner admitted that he told the trial court he understood this advice.

Kestner, 2008 WL 5397762 at *4-5.

For the reasons stated on the earlier related claim involving his counsel, the Court concludes that the state courts reasonably concluded that the petitioner's guilty plea was knowing and voluntary. This claim lacks merit.

### 3. The Miranda and Seibert Claims

For these claims, Petitioner reasserts the issues in his motion to suppress that the police officers violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966) and engaged in the question first tactic prohibited by the United States Supreme Court in Missouri v. Seibert, 542 U.S. 600 (2004). The state trial court concluded that the officers did not violate Miranda or Seibert. The Tennessee appellate court deemed these issues to be nondispositive because in light of the State's proof, any such violation would be harmless error. Kestner, 2006 WL 359698, at *3. Respondent contends that the latter determination represents an independent-and-adequate-state-ground to bar habeas relief, citing Coleman v. Thompson, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural.") (citation omitted).

15

In Petitioner's appeal, the Tennessee appellate court cited the state procedural rule governing the certified questions reserved in a plea agreement:

> [R]ule 37(b)(2) goes on to clarify that "the judgment or document need not reflect the state's consent to the appeal or the state's opinion that the question is dispositive." Id. 37(b)(2)(iv). Furthermore, even if the trial court and the parties agree that a question is dispositive of the issue, this court must still make an independent investigation into the dispositive nature of the certified question before accepting appellate review. Preston, 759 S.W.2d at 651 (opinion on petition to rehear). A certified question issue is dispositive only "when the appellate court 'must either affirm the judgment or reverse and dismiss.'" State v. Walton, 41 S.W.3d 75, 96 (Tenn. 2001) (quoting State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

Kestner, 2006 WL 359698, at*3 (footnote omitted).

That court then reviewed the State's proof and found Petitioner's confession claims to be harmless error given the State's other proof and thus, Petitioner's reserved claims were deemed non-dispositive under the cited state rule.

> **Even without the confession, the record reflects that the state had ample other evidence of the defendant's guilt**. For instance, the defendant was arrested wearing " [a] thick gold chain stolen from the victim after he was murdered." The vehicle the defendant was apprehended in matched the detailed description of the vehicle witnesses saw somebody leaving the victim's apartment get into. Additionally, police officers found a .25 caliber handgun under the house where the defendant hid on April 28, 2003, and ballistics experts determined .that a .25 caliber gun was used to kill the victim. As such, there is sufficient evidence of the defendant's guilt independent of his confession. See, e.g., State v. Hawkins, No. M2002-01819-CCA-R3-CD, 2004 WL 735028, at *3 (Tenn. Crim. App., at Nashville, Apr. 6, 2004), perm. app. denied (Tenn. Nov. 15, 2004); State v. McCutcheon, No. 87-89-III, 1988 WL 10066, at *I (Tenn. Crim. App., at Nashville, Feb. 9, 1988). **Even if we determined that the defendant's confession should have been suppressed, our determination would not dispose of the independent proof of murder brought against the defendant. Accordingly, we conclude the questions**

**regarding the trial court's denial of the defendant's motion to suppress are not dispositive of the case; and therefore, not properly before us.**

Id., at *10-11 (emphasis added).

As a general rule, a valid guilty plea waives all prior constitutional claims in the proceeding and such claims cannot be grounds for federal habeas review. Tollet v. Henderson, 411 U.S. 258, 267 (1973). Yet, where, as here, state law allows a defendant to preserve a claim notwithstanding his guilty plea, the Petitioner can assert those claims in a federal habeas action. Lefkowitz v. Newsome, 420 U.S. 283, 292-93 (1975).

The Tennessee appellate court's consideration of the Miranda and Seibert issues was, in essence, that assuming a Miranda violation and suppression of Petitioner's statements, the Miranda violations constituted harmless error. Under Supreme Court precedents at the time, a Miranda violation could be evaluated under the harmless error doctrine. Arizona v. Fulminante, 499 U.S. 279, 310-12 (1991). Despite the State appellate court's rationale , Petitioner has not challenged that Court's assessment of the State's proof without petitioner's statements to the officers. In any event, the state trial court conducted an evidentiary hearing, made credibility determinations and concluded that there was not any violation of Miranda or Seibert. (Docket Entry No. 17-5 at 43-48). A district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence," Mitchell, 325 F.3d at 738, and this presumption includes credibility findings. Skaggs, 235 F.3d at 266. Since the pendency of this

17

action, Petitioner has not submitted any proof to undermine the state trial court's findings. Thus, the Court deems the Petitioner's <u>Miranda</u> and <u>Seibert</u> claims to be without merit.

## 4. The <u>Brady</u> Claim

For this claim, petitioner asserts that at the suppression hearing on his <u>Miranda</u> claims, the police officers provided false testimony at that hearing in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). For the reasons stated above, Petitioner has not presented any proof to challenge the presumptive correctness of the state trial court's credibility determinations on his <u>Miranda</u> claims. This claim lacks merit and is procedurally defaulted without any showing of cause or prejudice.

For these reasons, the Court concludes that the petition for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _18th_ day of November, 2011.

William J. Haynes, Jr.
United States District Judge

18